IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| JAMES P. LOGAN, JR. and LOGAN FARMS INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-0055 |
| HORMEL FOODS INC. and WAL-MART INC., | § § § | |
| Defendants. | § | |


## MEMORANDUM OPINION AND ORDER


Plaintiff, James P. Logan, Jr., brings this action against defendants, Hormel Foods Inc. and Wal-Mart Inc., for infringement of U.S. Patent No. Re. 35,374, dilution/injury to trade reputation, unfair competition, and tortious interference with contract/ business relations.  Pending before the court are: (1) Defendants' Opening Markman Brief (Docket Entry No. 42), (2) Plaintiff's Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement (Docket Entry No. 44), and (3) Defendants' Cross-Motion for Summary Judgment on Infringement (Docket Entry No. 49).  For the reasons discussed below, and in conjunction with the court's construction of disputed claim terms, plaintiff's motion for partial summary judgment will be denied and defendants' cross-motion for summary judgment will be granted.

## I.  <u>Factual and Procedural Background</u>

Plaintiff James P. Logan, Jr. is the holder of U.S. Patent No. Re. 35,374 ("the '374 patent").  The '374 patent, titled "Spirally Sliced Boneless Meat Product," is a reissue of U.S. Patent No. 5,030,472.  In this case plaintiff accuses defendants Hormel Food Corp. and Wal-Mart Stores, Inc. of infringing the '374 patent by manufacturing, selling, or offering to sell Hormel's CURE 81 boneless, spiral-sliced hams.  Plaintiff indicates he will not pursue the other claims for dilution/injury to business reputation, unfair competition, and tortious interference with contract/ business relations.[1]

The '374 patent discloses a meat product and a method for making that product.  Claim 1 is the only claim (out of ten) that plaintiff asserts against defendants.  It describes a

> boneless sliced meat having its meat arranged in the form of a continuous spiral cut about an axis of the meat, the axis being created by the temporary insertion of a support member in the meat, *wherein the depth of said cut is limited to leave an uncut core of meat, said core being of sufficient cross-section to cause the boneless sliced meat to retain its shape when the support member is removed*.

'374 patent, col. 10, lines 4-10 (emphasis original).  The patent teaches a process in which a support member, or spit, is inserted

---

[1]See Letter from Robert M. Bowick to David Mayberry and Lee L. Kaplan (May 20, 2005), Tab 1, Appendix of Materials in Support of Defendants' Opening Markman Brief ("Defendants' Appendix I"), Docket Entry No. 46.

through a boneless piece of meat; the meat is then mounted in a slicing apparatus and held in place by chuck assemblies that contain protruding spikes and receive the ends of the spit; an electrical motor and drive shaft connected to one of the chucks rotates the meat about the axis created by the spit; a slicer blade is introduced into the meat in a plane substantially perpendicular to the meat's rotational axis; and the blade is indexed linearly along an axis parallel to the meat's rotational axis to create the spiral cut. '374 patent, abstract; cols. 3-4.  After slicing is complete the meat is removed from the apparatus and the support member from the meat.  '374 patent, abstract.  Because the slicer blade is limited to cutting within 1/8 of an inch of the meat spit, an uncut core of meat remains and functions to maintain the meat's shape.  '374 patent, col. 4, lines 47-51; col. 10, lines 4-10.

According to the affidavit of Hormel's Brian E. Hendrickson, a product manufacturing manager, Hormel produces its CURE 81 hams -- which are spiral-sliced and contain an uncut core -- with machines that "mount[] and grip[] the boneless meat product at both its opposing ends and drive[] those ends simultaneously and uniformly" during slicing operations.[2]  Prior to November 22, 2004,

---

[2]Affidavit of Brian E. Hendrickson at ¶¶ 2-3, 10, Tab 2, Appendix of Materials in Support of Defendants' Combined Reply to Plaintiff's Markman Brief, Opposition to Motion for Summary Judgment, and Memorandum in Support of Cross-Motion for Summary Judgment ("Defendants' Appendix II"), Docket Entry No. 51.

Hormel's machines included an "approximately two and three eighths (2 3/8) inch prong on the lower spindle to center the boneless meat and hold the meat on the lower spindle during slicing."[3]  Hormel subsequently replaced the 2-3/8 inch "prongs" with "prongs that are approximately one (1) inch long."[4]  Neither prong is long enough to traverse the length of the spiral cut, and the shorter one does not extend to where the cut begins.[5]

Plaintiff filed this suit along with co-plaintiff Logan Farms, Inc. in May of 2004 in the United States District Court for the Eastern District of Texas.[6]  After transfer to this court,[7] Logan Farms, Inc. was dismissed as a party plaintiff pursuant to plaintiff's unopposed motion.[8]  The remaining parties have submitted briefs proposing constructions of certain terms in the claim at issue.  They generally agree with Judge Ewing Werlein, Jr.'s construction of the claim terms in a previous infringement

_____

[3]Id. at ¶ 5.

[4]Id. at ¶ 6.

[5]See id. at ¶ 6; Exhibits 10-11 attached to Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47.

[6]See Plaintiff's Original Complaint, Docket Entry No. 1.

[7]See Memorandum Opinion and Order Transferring Venue to the Southern District of Texas (Aug. 25, 2004), Docket Entry No. 25.

[8]See Order (June 3, 2005), Docket Entry No. 48.

case brought by plaintiff against other defendants.[9]   See <u>Logan Farms, Inc., et al. v. Honey Baked Ham L.P., MI, et al.</u>, H-01-1611. The parties differ, however, over the construction of "support member" and what Judge Werlein meant when he construed this term to mean "spit."   The parties have also filed motions for summary judgment.

## II.   <u>Claim Construction</u>

### A.   <u>Standard of Review</u>

Claim construction is the first of two steps in a patent infringement suit.  It requires the court to determine, as a matter of law, the meaning and scope of the patent claims.  <u>Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298, 1306 (Fed. Cir. 2003) (citing <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (<u>en banc</u>), <u>aff'd</u>, 116 S. Ct. 1384 (1996)).  According to <u>Markman v. Westview Instruments, Inc.</u>, claim construction is the court's "power and obligation" in a jury case. 52 F.3d at 979.  The court's construction permits the jury in the second step of the suit to decide the fact question of infringement, which requires a comparison of properly construed patent claims and the alleged infringer's device or process.  See <u>Anchor Wall Sys., Inc.</u>, 340 F.3d at 1306.

_____

[9]See Plaintiff's Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 52; [Proposed] Findings of Fact and Conclusions of Law, attached to Defendants' Opening Markman Brief, Docket Entry No. 42.

In construing claims the court should consider first intrinsic evidence of the record:  the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  This is the "most significant source of the legally operative meaning of disputed claim language." <u>Id.</u>  When analysis of the intrinsic evidence permits unambiguous definition of the meaning and scope of the claims, as it will in most cases, reference to extrinsic evidence is improper.  <u>Id.</u> at 1583.  The Federal Circuit has recently reaffirmed this principle in <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005):  Although courts can put general or specialized dictionaries and comparable extrinsic sources to "appropriate use" in helping to ascertain the commonly understood meaning of words, they must give this evidence only the relatively limited weight it is due and not divorce claim terms from the context of the intrinsic evidence.  <u>See id.</u> at 1318-19, 1322-24.

A court's examination of the intrinsic evidence in a claim construction analysis begins with the words of the disputed claim itself.  <u>Vitronics Corp.</u>, 90 F.3d at 1582.  The claims define the scope of the right to exclude.  <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  In the absence of a patentee's "express intent to impart a

novel meaning to the claim terms," the words of the claims take on the "'ordinary and customary meanings attributed to them by those of ordinary skill in the art.'" <u>Mars, Inc. v. H.J. Heinz Co.</u>, 377 F.3d 1369, 1373 (Fed. Cir. 2004) (quoting <u>Int'l Rectifier Corp. v. IXYS Corp.</u>, 361 F.3d 1363, 1369 (Fed. Cir. 2004); <u>Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.</u>, 334 F.3d 1294, 1298 (Fed. Cir. 2003)).

In assessing the meaning of the claim terms a court must always review the specification. <u>Vitronics</u>, 90 F.3d at 1582. The specification is the part of the patent that "teaches" the invention so that one skilled in the art can make and use it. <u>Amgen, Inc. v. Hoechst Marion Roussel, Inc.</u>, 314 F.3d 1313, 1335 (Fed. Cir. 2003). The specification is "highly relevant" to claim construction because it may contain special or novel definitions of claim terms when the patentee has chosen to be his own lexicographer, <u>Vitronics</u>, 90 F.3d at 1582, or it may help to resolve ambiguity when the ordinary and customary meaning of a term is not sufficiently clear, <u>Teleflex, Inc.</u>, 299 F.3d at 1525. The specification might also contain a "clear disavowal of claim scope" through "expressions of manifest exclusion or restriction." <u>Teleflex, Inc.</u>, 299 F.3d at 1325. It may aid in determining whether the patentee "has disclaimed subject matter or has otherwise limited the scope of the claims." <u>Anchor Wall Sys.</u>, 340 F.3d at 1306. In sum, the specification is the "'single best guide

to the meaning of a disputed term,'" Phillips, 415 F.3d at 1321
(quoting Vitronics, 90 F.3d at 1582), and is usually "dispositive."
Vitronics, 90 F.3d at 1582.

A court must be prudent, however, in narrowing claim terms
based on the specification.  The Federal Circuit has instructed
that "limitations may not be read into the claims from the written
description" and that mere inclusion in the specification of
drawings depicting a "particular embodiment of the patent does not
operate to limit the claims to that specific configuration."
Anchor Wall Sys., 340 F.3d at 1306-07.  There is "sometimes a fine
line between reading a claim in light of the specification, and
reading a limitation into the claim from the specification," but
nevertheless, the court is to do the former and avoid the latter.
Comark Communications Inc. v. Harris Corp., 156 F.3d 1182, 1186
(Fed. Cir. 1998)).  "To avoid importing limitations from the
specification into the claims, it is important to keep in mind" the
purpose of the specification and to try to decide whether the
patentee is teaching the invention by "setting out specific
examples" or whether he instead "intends for the claims and the
embodiments in the specification to be strictly coextensive."
Phillips, 415 F.3d at 1323.

The final source of intrinsic evidence plays a role similar to
the specification in the claim construction analysis.  The
prosecution history of the patent -- the complete record of the

-8-

proceedings before the Patent and Trademark Office -- "provides evidence of how the PTO and the inventor understood the patent" and should be considered by the court, if in evidence.  Id. at 1317. "The patent applicant's consistent usage of a term in prosecuting the patent may enlighten the meaning of that term."  Metabolite Laboratories, Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1360 (Fed. Cir. 2004).  The prosecution history may contain "express representations made by the applicant regarding the scope of the claims."  Vitronics Corp., 90 F.3d at 1582.  But any limitation found in the history must be "clear and unmistakable." Anchor Wall Sys., 340 F.3d at 1307.

## B.  Construction of Claim 1

In defendants' view the only term in claim 1 of the '374 patent that remains at issue is "support member" -- the object that is temporarily inserted in the meat that creates the axis about which the spiral is cut.[10]  See '374 patent, claim 1, col. 10, lines 4-10.  Defendants urge the following construction: (1) "support" means "to keep the uncut core of meat from failing in order to maintain the continuous spiral cut about the axis of the meat," and (2) "support member" is a "single structure" that provides this support and that "extends at least the length of the continuous spiral cut."[11]  Defendants argue that this proposed

_____

[10]Defendants' Opening Markman Brief, Docket Entry No. 42, p. 2.

[11]Id. at 17-18.

construction is consistent with "spit," the term the parties recognize as Judge Werlein's construction of "support member" in the earlier case.[12]   Plaintiff accepts Judge Werlein's construction of the claim terms -- including "support member" as "spit" -- but urges the court, if anything, to define "spit" as a "pointed rod" or "pointed rod for holding meat" and to construct "in the meat" as "into the meat" (as opposed to "through the meat").[13]   Plaintiff resists any construction of "support member" indicating a "specific type, style or size of spit."[14]

The court begins by construing "support member" as "spit." This is consistent with both parties' arguments and their view of Judge Werlein's earlier construction of "support member."[15]

---

[12]_Id._ at 10-11.  See also Plaintiff's Memorandum in Support of Its Combined _Markman_ Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, p. 9.  It appears that "support member" was not directly at issue in the '374 patent case before Judge Werlein.  He did not enter an explicit construction of "support member" in his memorandum and order construing other terms of the '374 patent claims.  Judge Werlein did, however, use the word "spit" in apparent reference to "support member" throughout his construction of those other claim terms.  See Defendants' Opening Markman Brief, Docket Entry No. 42, pp. 10-11; Memorandum and Order (Sept. 4, 2003), _Logan Farms, Inc., et al. v. Honey Baked Ham, L.P., MI, et al._, H-01-1611, Tab 3, Defendants' Appendix I, Docket Entry No. 46.

[13]Plaintiff's Memorandum in Support of Its Combined _Markman_ Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 6-15.

[14]See _id._ at 13.

[15]See _supra_ notes 12-13 and accompanying text.

-10-

Further, the parties appear to agree that spit is a "pointed rod."[16] Their dispute, and the court's focus, centers on whether the "support member" mentioned in claim 1 should be further construed with additional limitations based on its function.

The claim language supports defendants' argument that the '374 patent requires a "support member" or "spit" that traverses the length of the spiral cut.  The claim states that the uncut core of meat must be of sufficient cross-section to permit the meat to retain its shape *when* the support member is removed.  '374 patent, claim 1, col. 10, lines 4-10.  If the support member were shorter than the length of the spiral cut, the uncut core would have to be sufficient to provide for the meat's integrity *during* slicing operations as well as after, when the spit is removed.  Otherwise, the meat would lose its shape as the slicer blade passed beyond the reach of the short spit, not just when the support member was removed.  But claim 1 mentions nothing about maintaining the meat's shape prior to spit removal.  Thus, the court concludes that the claim language contemplates a spit extending the length of the cut -- a spit that, while it remains inserted, supports the meat's shape regardless of the cross-section of the uncut core.

---

[16]See Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 11-13 (quoting dictionary definitions of "spit"); Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, pp. 4-5.

In responding to defendants' argument that "support member" contains a length limitation, plaintiff offers dictionary definitions suggesting "support" is synonymous with "hold."[17]  His theory, as the court interprets it, is that "support member" need not be read to serve the function of providing structural support to the entire length of uncut core and therefore need not be limited to any minimum length.[18]  The '374 patent's specification, however, appears to distinguish "support" and "hold."  As plaintiff himself notes, the summary and written description refers to a "meat spit" inserted in the boneless product that is "designed to provide structural support for the meat during boneless cutting operations."[19]  '374 patent, col. 4, lines 5-7.  See also '374 patent, col. 3, lines 63-65; col. 5, lines 61-64.

Moreover, it is the "chuck assembly," not the support member, that is "designed to hold and rotate the meat during cutting

---

[17]Plaintiff's Response to Defendants' Cross-Motion for Summary Judgment of Non-Infringement, Docket Entry No. 55, p. 7.

[18]See _id._  Plaintiff also suggests that "support member" need not be limited in accordance with any particular function: "The function of the structure of the claimed invention is of no consequence, unless the claim is written in 'means-plus' language pursuant to 35 U.S.C. § 112, ¶ 6."  _Id._ at 7-8.  This unelaborated and unsupported assertion is without merit.  To the extent the claim term serves a particular function as identified by the patent, that function is relevant to a proper construction of that term.  _See_ _Phillips v. AWH Corp._, 415 F.3d 1303, 1324-27 (Fed. Cir. 2005).

[19]See Plaintiff's Memorandum in Support of Its Combined _Markman_ Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 12-13.

-12-

operations." '374 patent, col. 4, lines 1-2.  The written descrip-
tion indicates that the meat is "held" by "the plurality of spikes"
located on the faces of the upper and lower chucks.  '374 patent,
col. 9, lines 38-40.

The court is persuaded that the patent's repeated association
of "spit" with "structural support" on the one hand, and "chuck
assembly" and "spikes" with "hold" on the other, indicates a
special role for "support member" beyond merely holding the meat.
In other words, the difference in diction suggests "support member"
cannot be just another spike, or even an elongated one, and indeed
the written description discloses a spit that travels completely
through the boneless meat product.  '374 patent, col. 6, lines 1-3.
Thus, the specification is entirely consistent with the court's
initial reading of "support member" as a spit extending the length
of the spiral cut that serves the particular function of helping
the boneless meat maintain its shape.

The prosecution history confirms that "support member" should
be construed along the lines of the court's interpretation of the
claim language.  During reexamination of his patent plaintiff
"submitted videotaped evidence of the inoperability" of an
abandoned prior patent application and "the patentably distinct
product produced by [him] using the patentably distinct method."[20]

---

[20]Response to Office Action Dated Sept. 10, 1992, at pp. 1-
2, Tab 4, Defendants' Appendix I, Docket Entry No. 46.

The court has viewed this tape.[21]  It depicts a series of attempts to spirally-slice boneless meat products.  In three of those attempts no spit was used.  Each time, regardless of the radius of uncut core -- which was as great as two inches -- the spit-less meat broke apart during slicing.[22]  Plaintiff explained to the examiner that "the rotational force imparted on one end of the meat product . . . caused rotational stresses in the solid core of meat that caused the meat product to twist apart" despite the solid central core.[23]  The core simply "lacked the necessary stability and physical integrity to prevent the [meat] from twisting apart."[24]  As plaintiff stated, his "unique method" included a "spit through the center axis" that "provides the boneless meat product with sufficient structural stability during the slicing operation."[25]  With the spit traversing the product, the meat did not twist apart in the final experiment on the videotape.  Given this context it is clear that "support member" envisions a structure that helps the meat remain whole during slicing operations.

_____

[21]Defendants have included a copy of the videotape at Tab 15, Defendants' Appendix I, Docket Entry No. 46.

[22]Response to Office Action Dated Sept. 10, 1992, at p. 2, Tab 4, Defendants' Appendix I, Docket Entry No. 46.

[23]_Id._

[24]Declaration of James P. Logan, attached to Response to Office Action Dated Sept. 10, 1992, Tab 4, Defendants' Appendix I, Docket Entry No. 46.

[25]Response to Office Action Dated Sept. 10, 1992, at p. 3, Tab 4, Defendants' Appendix I, Docket Entry No. 46.

Although it does not appear that plaintiff expressly stated in the prosecution history that the "support member" or spit must traverse the length of the spiral cut, the court is persuaded that no other conclusion is reasonable. Like the specification, plaintiff's videotaped demonstration of his "unique method" disclosed a spit extending through the boneless meat product. There is no hint that the benefit provided by the support member component -- which, according to any fair assessment of plaintiff's argument during reexamination, was an important part of his "patently distinct method"[26] -- could be obtained with a shorter spit, much less with one that does not even traverse the length of the spiral cut. Moreover, plaintiff's representations before the examiner, like his claim language, suggest a support member or spit that is coextensive with the spiral cut. In his summary of the videotape segment depicting his method, plaintiff indicated that "[a]fter the boneless meat product has been sliced and the spit removed, the remaining solid central core of meat provides the

_____

[26]Without it, plaintiff's method would be as inoperable as the three failed experiments depicted in the videotape. Plaintiff insists that he did not distinguish his invention from the prior art on the basis of any particular length spit.  See Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 13-14; Plaintiff's Response to Defendants' Cross-Motion for Summary Judgment of Non-Infringement, Docket Entry No. 55, pp. 8-9.  However, the contrast between his method and the failed experiments indicates that a spit of at least some minimum length is a necessary part of the claimed invention.

spiral sliced boneless meat product with structural integrity
. . . ."[27]

As the court's review of the intrinsic evidence indicates, the court concludes that defendants' proposed limitation of "support member" (incorporating their construction of "support") is correct. Accordingly, the court adopts the following construction of "support member": a spit (or pointed rod) that traverses the length of the spiral cut and helps the boneless meat product maintain its shape or integrity during slicing operations.

As noted above, plaintiff argues that "in the meat" should be read as "into the meat," not "through the meat."[28]   The court declines to adopt this construction.   According to the court's reading of the '374 patent's claim 1, the spit may or may not extend completely through the meat.   The claim language "in the meat" is consistent with either length spit.[29]

---

[27]Response to Office Action Dated Sept. 10, 1992, at p. 3, Tab 4, Defendants' Appendix I, Docket Entry No. 46.

[28]See supra note 13 and accompanying text.

[29]Plaintiff argues that the "principles of claim differen-tiation" compel the adoption "into the meat" for "in the meat," because other claims in the '374 patent require spits that are inserted "through the meat."  Plaintiff's Memorandum in Support of Its Combined Markman Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, p. 14.  The court notes its construction of claim 1 does not require the spit to traverse the entire cut of meat but merely the length of the spiral cut.

The remainder of claim 1's terms are construed in accordance with Judge Werlein's earlier construction, as set forth by the parties in their _Markman_ briefs.[30]

### III.   <u>Infringement</u>

**A.   Standard of Review**

An order granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A "genuine" dispute over a fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2510 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing law."   <u>Id.</u>   In considering a summary judgment motion the court is to resolve any doubts and draw any inferences in favor of the nonmoving party.   <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001).

Summary judgment may be granted, upon motion and after an adequate period for discovery, against a party who has failed to make a sufficient showing establishing the existence of an element

---

[30]See <u>id.</u> at 7; Defendants' Opening Markman Brief, Docket Entry No. 42, p. 10.

essential to the party's case and as to which the party bears the burden of proof. <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986). The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion" and "identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 2553. If this burden is met the nonmoving party must respond by going outside the pleadings and pointing to facts that indicate a "genuine issue for trial." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party must do more than rest on "'some metaphysical doubt,'" "'conclusory allegations,'" "'unsubstantiated assertions,'" or a mere "'scintilla'" of evidence. <u>Id.</u> at 1075 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S.Ct. 1348, 1356 (1986); <u>Lujan v. Nat'l Wildlife Fed'n</u>, 110 S.Ct. 3177, 3180 (1990); <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir. 1994); <u>Davis v. Chevron USA, Inc.</u>, 14 F.3d 1082 (5th Cir. 1994)). Instead, the party opposing summary judgment must respond by "tendering depositions, affidavits, and other competent evidence," <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).

## B.   Literal Infringement

Plaintiff and defendants each move for summary judgment as to literal infringement. Relying in part on his construction of

"support member," plaintiff argues that the boneless, spiral-sliced hams manufactured by defendant Hormel and sold by defendant Wal-Mart literally infringe claim 1 of the '374 patent.[31] Defendants contend they are entitled to summary judgment of non-infringement because, among other things, the "lower prongs" on its machines are not "support members."[32]

Having construed the claim term "support member" as a spit extending through the length of the spiral cut, the court concludes that defendants' product does not literally infringe claim 1 of the '374 patent.  "[A]n accused product literally infringes if every limitation recited in the claim appears in the accused product." Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed. Cir. 2000).  The evidence is clear that contrary to the express requirement of claim one, the axis about which the meat in defendants' product is arranged was not created by the temporary insertion of a "support member" -- a spit traversing the length of the spiral cut that helps the meat maintain its integrity during slicing.  See '374 patent, col. 10, lines 4-10.  The spit on defendants' machine is too short to qualify as a "support member" contemplated by the '374 patent.

---

[31]Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 17-22.

[32]Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, pp. 11-17.

The parties agree that the process defendant Hormel used to spiral-slice the accused product -- at least prior to the week beginning November 22, 2004 -- is depicted by video footage contained on a CD included with plaintiff's brief supporting his motion for partial summary judgment.[33] The court has reviewed this footage.  It is consistent with defendants' representation (supported by the affidavit of a Hormel Product Manufacturing Manager) that the spiral-slicing machines used by Hormel contain a spit -- defendants call it a "prong" -- on the "lower spindle" that is 2-3/8 inches long.[34]  It does not appear to the court that this spit traverses the entire length of the spiral cut -- or perhaps even half.[35]

## C.   Equivalents

Defendants also move for summary judgment that the accused product does not infringe the '374 patent under the doctrine of

---

[33]See Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47, pp. 18-22; Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, p. 11.

[34]Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, p. 11 (citing Affidavit of Brian E. Hendrickson, at ¶¶ 4-5, Tab 2, Defendants' Appendix II, Docket Entry No. 51).

[35]See Exhibits 10-11 attached to Plaintiff's Memorandum in Support of Its Combined *Markman* Brief and Motion for Partial Summary Judgment of Patent Infringement, Docket Entry No. 47.

equivalents.[36] Plaintiff opposes summary judgment because defendants do not deny some length "'prong' or other pointed rod" must be used and that defendants cannot show their "'prong(s)' do not perform substantially the same function, in substantially the same way, to achieve substantially the same result as the 'support member' or 'spit' of the claimed invention."[37] Plaintiff asserts that "[t]he culmination of evidence of the parties [sic] respective *Markman* briefs and motions for summary judgment clearly evidence at least a question of fact as to whether Defendants' 'prong(s)' satisfy one of these three inquiries."[38]

According to the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 117 S.Ct. 1040, 1045 (1997). Elements are equivalent if they perform "substantially the same function in substantially the same way to obtain

---

[36]Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, pp. 17-19.

[37]Plaintiff's Response to Defendants' Cross-Motion for Summary Judgment of Non-Infringement, Docket Entry No. 55, p. 10.

[38]Id.

substantially the same result." See Anchor Wall Sys., Inc., 340 F.3d at 1313. See also Warner-Jenkinson Co., 117 S.Ct. at 1054. The doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole"; the doctrine must not be "allowed such broad play as to effectively eliminate [an] element in its entirety." Warner-Jenkinson Co., 117 S.Ct. at 1049. Accordingly, there is infringement under the doctrine of equivalents only if the accused product or process contains elements identical or equivalent to each claimed element of the patented invention. See id. at 1054.

Defendants' 2-3/8-inch spit does not perform "substantially the same function in substantially the same way to obtain substantially the same result" as claim 1's "support member." As the court has construed it, the "support member" used to create the axis, see '374 patent, col. 10, lines 4-10, is a spit that helps the meat maintain its integrity during slicing operations. Defendants' short spit apparently does not perform this function. Referencing the affidavit of the Hormel product manufacturing manager, defendants describe a videotaped experiment in which a ham was sliced on a Hormel machine with no prong on the lower spindle.[39]

---

[39]Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, pp. 12-14 (citing Affidavit of Brian E. Hendrickson, at ¶¶ 11-13, Tab 2, Defendants' Appendix II, Docket Entry No. 51).

The "meat was spirally sliced from top to bottom without twisting or breaking."[40]  According to the Hormel manager, the "dual-drive design" of Hormel's machines -- the machines "mount[] and grip[]" the boneless meat at both ends and drive the ends "simultaneously and uniformly" -- "reduces torque on the boneless meat, preventing the central core from twisting apart and breaking."[41]

Plaintiff neither cites his own evidence controverting the validity of this experiment nor explains how a fact question of equivalence remains despite the experiment's findings.  Instead, plaintiff appears to ignore or overlook that defendants actually do deny that any prong or pointed rod is necessary for their product.  Plaintiff has not met his summary judgment burden.

## D.  Defendants' New Product

In their brief supporting the cross-motion for summary judgment, defendants indicate that Hormel replaced the 2-3/8-inch spits on the meat slicing machines with prongs slightly less than an inch long in November of 2004.[42]  As a result, defendants state

---

[40]Id. at 13.

[41]Affidavit of Brian E. Hendrickson at ¶ 10, Tab 2, Defendants' Appendix II, Docket Entry No. 51.

[42]Defendants' Combined Brief in Reply to Plaintiff's Markman Brief, in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Their Cross-Motion for Summary Judgment, Docket Entry No. 50, p. 11 (citing Affidavit of Brian E. Hendrickson, at ¶¶ 4-5, Tab 2, Defendants' Appendix II, Docket Entry No. 51).

-23-

that the slicing blade begins the spiral cut above the bottom prong -- the one-inch spit does not penetrate the uncut core of meat at the center of the spiral cut.[43]  The court has focused its analysis on the product created with the 2-3/8-inch spits because defendants did not modify the machines to include the shorter spits until months after plaintiff filed suit.  Nevertheless, it is clear that the foregoing discussion relating to the product created with the 2-3/8-inch prongs applies as well to the product created with the shorter ones:  The products created using the one-inch prongs neither literally infringe nor are equivalent to the product in claim 1 of the '374 patent.

## IV.  Conclusions and Orders

For the reasons discussed above, the court concludes that "support member" as used in claim 1 of the '374 patent is a spit (or pointed rod) that traverses the length of the spiral cut and helps the boneless meat product maintain its shape or integrity during slicing operations.  The remainder of claim 1's terms are construed in accordance with Judge Werlein's construction of the same in <u>Logan Farms, Inc., et al. v. Honey Baked Ham L.P., MI, et al.</u>, H-01-1611.

---

[43]<u>Id.</u> (citing Affidavit of Brian E. Hendrickson, at ¶ 5, Tab 2, Defendants' Appendix II, Docket Entry No. 51).

Consistent with the court's analysis, plaintiff's Motion for Partial Summary Judgment of Patent Infringement (Docket Entry No. 44) is **DENIED**, and Defendants' Cross-Motion for Summary Judgment on Infringement (Docket Entry No. 49) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 2nd day of September, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE